**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SEAN M. TAYLOR,**

                Plaintiff,             6:12-cv-1389
                                                 (GLS)

                v.

**CAROLYN W. COLVIN,**
Acting Commissioner of Social
Security,

                **Defendant.**
_____

**APPEARANCES:**                       **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Office of Peter W. Antonowicz       PETER W. ANTONOWICZ, ESQ.
148 West Dominick Street
Rome, NY 13440

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN    BENIL ABRAHAM
United States Attorney               Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**

## **MEMORANDUM-DECISION AND ORDER**

### **I. Introduction**

Plaintiff Sean M. Taylor challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB), seeking judicial review under 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Taylor's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

### **II. Background**

On May 21, 2009, Taylor filed an application for DIB under the Social Security Act ("the Act"), alleging disability since February 20, 2006. (Tr.[1] at 95, 137-42.) After his application was denied, (*id.* at 96-101), Taylor requested a hearing before an Administrative Law Judge (ALJ), which was held on July 27, 2010, (*id.* at 58-94, 102-03). On September 17, 2010, the ALJ issued an unfavorable decision denying the requested benefits, which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*See id.* at 1-7, 36-52.)

Taylor commenced the present action by filing his complaint on September 11, 2012 wherein he sought review of the Commissioner's

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 7.)

determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 6, 7.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 11, 12.)

### III. Contentions

Taylor contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 11 at 16-24.) Specifically, Taylor claims that the ALJ failed to: (1) properly evaluate his credibility; (2) properly weigh the medical evidence; (3) obtain the testimony of a vocational expert (VE); and (4) consider whether his traumatic brain injury met the requirements of listing 12.02. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence. (Dkt. No. 12 at 5-18.)

### IV. Facts

The court adopts the parties' undisputed factual recitations. (Dkt. No. 11 at 3-13; Dkt. No. 12 at 1.)

### V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g) is well established and will not be repeated here. For a

full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Credibility

First, Taylor contends that "the ALJ failed to conduct a proper analysis of [his] subjective complaints and his credibility." (Dkt. No. 11 at 16-21.) The court disagrees.

Once the ALJ determines that a claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," he "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted). In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the

weight given to the [claimant's] statements." SSR 96-7p, 61 Fed. Reg. 34,483, 34,486 (July 2, 1996). Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).

Here, the ALJ determined that Taylor's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they are inconsistent with the ALJ's residual functional capacity (RFC)[2] determination. (Tr. at 44.) In making this determination, the ALJ considered the objective medical evidence, the opinion evidence, and Taylor's activities of daily living. (*Id.* at 44-46.) In particular, the ALJ noted that Taylor is able to care for his personal

---

[2] A claimant's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

hygiene, care for his two small children, accompany his wife while shopping during off-hours, take vacations, and travel to visit his family. (*Id.* at 45-46, 252, 255, 262, 265, 280, 309, 311, 377, 379, 610.) Further, Taylor testified that he attended college classes in the spring of 2010 for three hours a day, five days a week, and "achieved two grades of A, two grades of B[,] and an F." (*Id.* at 46, 87-88.) Taylor was also enrolled in classes for the fall 2010 semester. (*Id.* at 88-89.)

Taylor argues that the ALJ erred in not "offering any explanation as to how performance in academic endeavors correlates to the ability to perform a full time job," and not "examin[ing] the reasons why [he] was absent consistently from one class that resulted in a grade of 'F.'" (Dkt. No. 11 at 19.) However, the ALJ reasonably concluded that Taylor's ability to attend and perform well in a college course of study, despite his receipt of one failing grade which he attributed to several absences, contradicted his alleged extensive problems with concentration and reading. (Tr. at 46, 71-72.)

Further, Taylor asserts that his inconsistent treatment history and noncompliance with prescribed treatment is the result of his mental impairment itself. (Dkt. No. 11 at 19.) However, here, where there is

6

nothing in the medical records to link Taylor's inconsistent mental treatment to his medical condition, the ALJ properly considered such treatment history as one factor relevant to making a credibility assessment. *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(v); *O'Grady v. Astrue*, No. 3:10cv1704, 2012 WL 3727220, at *18 (D. Conn. Jan. 19, 2012); *see also Mendoza v. Astrue*, No. 6:06-CV-1233, 2008 WL 5054243, at *17 (N.D.N.Y. Nov. 20, 2008). In this case, the ALJ noted that Taylor did not receive treatment for Post Traumatic Stress Disorder (PTSD) from April 2008 until August 2009. (Tr. at 45.) Indeed, in July 2009, Taylor explained to consultative examiner Kristen Barry that he was not currently getting treatment or taking medication because he was doing "fairly well" and "ha[d] a new baby in the home and . . . there [wa]s just no time for depression." (*Id.* at 309, 311.) Additionally, in February 2009, when contacted by the Syracuse VA Medical Center offering treatment for PTSD, Taylor indicated that he was doing well and not in need of services. (*Id.* at 222-23.) At the administrative hearing, Taylor asserted that he declined treatment from the Syracuse VA Medical Center because a previous therapist had left without explanation, causing him to lose trust in the facility. (*Id.* at 82.)[3]

---

[3] Taylor mistakenly testified that this conversation took place in 2006. (Tr. at 82.)

7

Ultimately, the ALJ sufficiently set forth reasons, which were well grounded in the record, for finding Taylor to be only partially credible.

B. **Weighing Medical Evidence**

Next, Taylor argues that the Commissioner failed to properly weigh the medical evidence. (Dkt. No. 11 at 21-23.) Specifically, Taylor asserts that there is a contradiction in the ALJ's RFC determination which indicated that Taylor could perform a limited range of medium work and that he was capable of performing work at all exertional levels. (*Id.* at 21.) Further, Taylor contends that the ALJ should have afforded great weight to the opinion of treating psychologist Tanya Bowen.[4] (Dkt. No. 11 at 22-23.) The Commissioner counters, and the court agrees, that the ALJ properly evaluated the medical opinion evidence. (Dkt. No. 12 at 12-16.)

Initially, the court concludes that the ALJ determined that Taylor could perform the demands of "medium work," and his reference to "work at all exertional levels" was an inadvertent typographical error. (Tr. at 43.) Notably, throughout his determination, the ALJ references medium work and cites to the definition of such work in the Regulations. (*Id.* at 43, 45,

---

[4] In his brief, Taylor mistakenly refers to Dr. Bowen as "treating physician Young." (Dkt. No. 11 at 22; Tr. at 599-601.)

8

47); *see* 20 C.F.R. 404.1567(c).  Further, as the ALJ explained, the opinion of consultative examiner Kalyani Ganesh, as well as the objective medical evidence of record, and Taylor's treatment history, supports a limitation to medium work.  (*Id.* at 45.)

Turning to the opinion of Dr. Bowen, controlling weight will be given to a treating source's opinion on the nature and severity of a claimant's impairments where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."  20 C.F.R. § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).  When a treating source's opinion is given less than controlling weight, the ALJ is required to consider the following factors: the length, nature and extent of the treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner.  20 C.F.R. §§ 404.1527(c)(2)-(6).  The ALJ must provide "'good reasons' for the weight given to the treating source's opinion.'"  *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (citations omitted).  "Nevertheless, where 'the evidence of record permits [the court] to glean the rationale of an ALJ's decision,'" it is not necessary that the ALJ "'have mentioned every item of

9

testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.'"  *Id*. (citation omitted).

Here, Dr. Bowen opined that Taylor had "no ability to" deal with the public and stress, and was "effectively precluded from" relating to family and acquaintances, relating to authority figures, functioning independently, and relating predictably in social situations.  (Tr. at 599-600.)  In addition, Taylor was effectively precluded from using judgment, maintaining attention and concentration, and understanding, remembering, and carrying out complex and detailed, but not complex, instructions.  (*Id.* at 599.)  According to Dr. Bowen, Taylor was also "significantly limited but not precluded from" understanding, remembering, and carrying out simple instructions, behaving in an emotionally stable manner, and demonstrating reliability.  (*Id.* at 599-600.)  The ALJ gave "little weight" to the opinion of Dr. Bowen, because it is unsupported by the objective medical evidence and is inconsistent with the level of functioning reported by Taylor.  (*Id.* at 46.)

Taylor points to the opinion of treating psychiatrist Dr. Louis Profenno as support for Dr. Bowen's restrictive opinion.  (Dkt. No. 11 at 22.)  Dr.

Profenno opined that Taylor's ability to deal with the public, deal with stress, understand, remember, and carry out complex instructions, behave in an emotionally stable manner, and relate predictably in social situations was "seriously limited." (Tr. at 406-07.) However, "whether there is substantial evidence supporting the [claimant]'s view is not the question"; instead, the court "must decide whether substantial evidence supports *the ALJ's decision.*" *Bonet ex rel. T.B. v. Colvin*, No. 12-4186-cv, 2013 WL 3214890, at *1 (2d Cir. June 27, 2013).

Here, substantial evidence supports the ALJ's decision to discount the opinion of Dr. Bowen. For example, Taylor's mental status examinations throughout the record were largely benign. (Tr. at 224, 240-41, 249, 253, 263, 266-67, 273, 275, 302, 310-11, 356, 369, 372, 377, 380-81, 431, 434-35, 448-49, 454, 480, 602-03, 609-10, 613.) Additionally, testing conducted by the Syracuse VA Medical Center in November 2007 revealed only mild memory deficits and it was noted that Taylor remained focused during testing. (*Id.* at 255-56.) Dr. Barry conducted intelligence testing on Taylor in July 2009 and noted that he was relaxed and comfortable throughout the testing session, was able to recall and understand the instructions, and had good attention and concentration.

11

(*Id.* at 314.)  The results of that testing revealed that Taylor's cognitive functioning was in the average range.  (*Id.* at 314-15.)  As discussed above, Taylor attended college classes five days a week, with fifteen students in a class, and planned to take additional classes in the future.  (*Id.* at 87-90.)  He testified that while attending classes he suffered no instances of loss of impulse control, although he failed to attend classes approximately once a week.  (*Id.* at 91-92.)  Further, he reported playing video games "hourly" and participating in the care of his two children.  (*Id.* at 173, 176.)  He also reported no "problems getting along with" people in positions of authority, and that he "can tolerate being around a group of people as long as he knows them."  (*Id.* at 178, 293.)  Dr. Barry's report indicates that Taylor has fair to good relationships with his family, and, although Taylor denied it at the administrative hearing, (*id.* at 81-82), he has friends with whom he socializes, (*id.* at 311).  Based on her examination, Dr. Barry opined that Taylor is able to follow and understand simple instructions and directions and maintain attention and concentration.  (*Id.*)  In addition, after reviewing the medical evidence of record, psychologist M. Totin opined that Taylor's mental health impairment was not severe under the Regulations.  (*Id.* at 323, 333, 335.)

Lastly, it is important to note that the ALJ did not discount the opinion of Dr. Profenno wholesale, but rather adopted some of the limitations adduced by him in finding that Taylor could perform only simple, unskilled work, with only occasional interaction with the public. (*Id.* at 43.) Indeed, Dr. Profenno himself opined that Taylor had a "fair" ability to, among other things, relate to acquaintances, use judgment, relate to authority figures, maintain attention and concentration, understand, remember, and carry out simple and detailed, but not complex instructions, and demonstrate reliability. (*Id.* at 406-07.)

In sum, the ALJ provided sufficient reasons for discounting the opinions of Drs. Bowen and Profenno, and his decision to do so is supported by substantial evidence.

## C. Vocational Expert

Taylor also argues that "[s]ince the ALJ found 'marked difficulties in social functioning,' a [VE] should have been called." (Dkt. No. 11 at 23.) Moreover, Taylor contends that errors in assessing his credibility and weighing the medical evidence caused the ALJ to improperly determine Taylor's nonexertional impairments. (*Id.*) The court disagrees.

As discussed above, the ALJ's credibility finding and evaluation of

13

the medical evidence were legally sound and are supported by substantial evidence. *See supra* Part VI.A-B. Further, contrary to Taylor's argument, at step two of the sequential evaluation, the ALJ found Taylor to suffer mild limitations in social functioning. (Tr. at 42.) Although the ALJ determined that Taylor suffers from nonexertional limitations, he concluded that such limitations had little or no effect on the occupational base of unskilled medium work. (*Id.* at 47); *see Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (explaining that an ALJ should consult with a VE "if a claimant's nonexertional impairments 'significantly limit the range of work permitted by [his] exertional limitations'" (quoting *Blacknall v. Heckler*, 721 F.2d 1179, 1181 (9th Cir. 1983))). As the Commissioner points out, (Dkt. No. 12 at 18), unskilled work "ordinarily involve[s] dealing primarily with objects, rather than with data or people." SSR 85-15, 1985 WL 56857, at *4 (1985). Accordingly, the ALJ did not err in failing to obtain the testimony of a VE.

### D. Listing 12.02

Finally, Taylor contends that the ALJ erred in failing to consider

whether he suffers from an impairment equal to listing 12.02.[5] (Dkt. No. 11 at 23-24.)  According to Taylor, the evidence of record supports the finding that, as a result of his brain injury, he experiences perceptual or thinking disturbances and emotional lability resulting in a marked restriction of activities of daily living, and marked difficulties in maintaining social functioning and maintaining concentration, persistence, and pace.  (*Id.*)  On the other hand, the Commissioner argues that the ALJ properly determined that Taylor failed to meet the B requirements of listing 12.02.  (Dkt. No. 12 at 5-8.)  The court agrees with the Commissioner.

At the third step of the disability evaluation, the ALJ is required to determine whether the claimant's impairment(s) meet or equal an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  *See* 20 C.F.R. § 404.1520(d); *Encarnacion ex rel. George v. Barnhart*, 331 F.3d 78, 81 (2d Cir. 2003).  To satisfy listing 12.02, which pertains to organic mental disorders, Taylor was required to demonstrate, "a loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one of" the conditions specified in paragraph A, including

---

[5] Although Taylor asserts that he meets the requirements of listing 12.02(C), his arguments pertain to the requirements of paragraphs A and B of that section.

15

perceptual or thinking disturbances, or emotional lability and impairment in impulse control. 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.02(A)(3), (6). The persistent condition from paragraph A must result in at least two of the paragraph B conditions, specifically: "1. [m]arked restriction of activities of daily living; or 2. [m]arked difficulties in maintaining social functioning; or 3. [m]arked difficulties in maintaining concentration, persistence, or pace; or 4. [r]epeated episodes of decomposition." *Id.* § 12.02(B).

Taylor's claim that the ALJ failed to consider listing 12.02 is flatly incorrect. (Dkt. No. 11 at 23-24.) The ALJ explicitly considered listing 12.02 and concluded that Taylor suffered only a mild restriction in activities of daily living, mild difficulties in social functioning, moderate difficulties in maintaining concentration, persistence, and pace, and has experienced no episodes of decompensation. (Tr. at 42.) Taylor relies on the opinions of Drs. Bowen and Profenno, to support his argument that he suffers marked restrictions in activities of daily living, social functioning, and concentration, persistence, and pace. (Dkt. No. 11 at 24.) However, as discussed above, the ALJ properly declined to give the opinions of these treating sources controlling weight. *See supra* Part VI.B. Further, the ALJ's determination with respect to each of the relevant areas of functioning, is supported by

16

substantial evidence.  Treatment notes and Taylor's own reported activities indicate that he is able to care for his personal hygiene, drive a vehicle, care for his two small children, perform yard work with assistance, and accompany his wife while shopping.  (Tr. at 42, 173-76, 256, 311.)  With respect to social functioning, although Taylor suffered difficulties, treatment notes reveal that he was pleasant and sociable, with good eye contact, and was able to attend college courses, attend group therapy sessions, travel to visit family, and maintain a good relationship with his spouse.  (*Id.* at 224, 232, 239, 242, 249, 253, 262, 266, 310-311, 369, 372, 377, 379, 437, 454, 491, 610.)  Taylor's memory was consistently found to be intact and his attention and concentration within normal limits, he achieved high marks in four of his five college courses, and regularly played video games.  (*Id.* at 88, 176, 224, 241, 249, 253, 263, 266-67, 275, 311, 356, 435.)  In addition, Dr. Totin opined that Taylor only suffered mild functional limitations.  (*Id.* at 333.)

Based on the foregoing, the court cannot find that the ALJ's determination—that Taylor did not meet the requirements of listing 12.02(B)—was unsupported by substantial evidence.

**E.    Remaining Findings and Conclusions**

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

### VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Taylor's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

November 22, 2013
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court